McBRIDE, Judge.
This suit involves the demand of plaintiff, a man 61 years of age, for $26,139.65, for personal injuries and attendant expenses, allegedly sustained as a result of an accident which happened at 5 o’clock in the afternoon on November 24, 1957, at the intersection of Airline Highway (U. S. 61) and Transcontinental Drive, Parish of Jefferson, when the taxicab plaintiff was driving was run into by an automobile driven by Francis J. Killeen. Killeen and his insurer are impleaded as defendants in solido.
After a trial on the merits of the case, plaintiff recovered judgment for $9,500, from which the defendants have prosecuted this appeal.
At the outset we make the observation that it is not unusual in cases involving automobile accidents to find many contradictions, inconsistencies and disputations in the testimony of the witnesses, and such circumstances seem to be more prevalent in the instant case than in most.
Just before the accident plaintiff drove his taxicab to an establishment located on the lake side of Airline Highway and picked up a passenger. He then drove out of the private driveway of said establishment into the outbound traffic roadway of Airline Highway and then made a diagonal crossing of the highway to the intersection of Transcontinental Drive, which is some 25 feet distant from the driveway from1 which he emerged. It was plaintiff’s intention to make a “U” turn to the left at Transcontinental Drive and enter the inbound traffic roadway of Airline Highway in order to carry his passenger in the direction of New Orleans. Upon reaching Transcontinental Drive, plaintiff observed there was passing traffic in the inbound lane which necessitated that he stop in the aperture in the narrow neutral ground which bisects Airline Highway, and while in such stopped position the rear end of his automobile protruded out into the outbound roadway of the highway.
*542 There is testimony pro and con as to whether plaintiff was actually stopped when the accident happened, but we believe the weight thereof is to the effect that plaintiff remained in a stationary position for an appreciable time before the crash, but must state we do not believe that he was stopped for a period of two minutes as he testified was the case.
While plaintiff’s cab was in the stationary position as aforesaid, the rear of its left side was crashed into by Killeen’s car which was being driven on the highway in the direction of Baton Rouge.
Several witnesses observed plaintiff come from the private driveway and enter the highway, and the testimony convinces us that when he “shot out” into the highway, there were three cars thereon traveling in the direction of Baton Rouge, one of which was driven by an unnamed person, one being Killeen’s, and the third vehicle being that of a policeman, who testified his car was two car lengths behind Killeen as the approach was made to Transcontinental Drive, and that a car was ahead of Killeen. Killeen’s car and the one ahead of him travelled in the lane adjacent to the neutral ground, and evidently the driver of the car that was ahead of Killeen’s noticed plaintiff’s taxicab stopped at the aperture in the neutral ground as he brought his car to a stop. Killeen, however, swung to his right and came from behind and around the cat-ahead of him and then veered left so as to resume travelling in the lane adjacent to the neutral ground and then violently crashed into plaintiff’s stopped taxicab.
Testimony emanating from the policemen in the case is to the effect that Killeen “reeked” of alcohol and was drunk and incoherent. Killeen, in a bellicose mood, wanted to fight with the officers who deemed it necessary to put him in handcuffs and take him away from the scene. One of these officers said he had observed Killeen’s car a few blocks before the Transcontinental Drive intersection and that it was moving at a speed of 55-65 miles per hour and weaving in and out of traffic, these circumstances leading the officer to suppose its driver was drunk, so he gave chase in order to apprehend him and the chase was in progress when the accident occurred. Killeen endeavored to offset the damaging import of the testimony given by the police officers by making the unimpressive assertion he was not drunk but was only dazed as a result of the impact between the two cars. However, he admits consuming several beers as well as some whisky highballs. There is no doubt he was under the influence of alcohol.
The defense is predicated on the contention that plaintiff emerged from the private driveway into the highway when Killeen’s car was in close proximity, creating a sudden emergency, and Killeen could do nothing to avoid running into the taxicab which was still moving when struck. This defense is completely without merit. The thing that places Killeen in a most unfavorable light is the fact the car ahead of him came to a stop to avoid running into the taxicab, and had Killeen been driving in a prudent manner and with full control of his faculties, he, too, could have stopped in time to avoid the collision.
The trial judge saw and heard the witnesses testify (with the exception of the passenger in the taxicab, whose testimony, by agreement, was taken out of the presence of the court), and resolved the question of veracity and credibility and all factual issues in plaintiff’s favor, and we do not find any manifest error in his findings. We, as he, think that Killeen was guilty of several of the acts of negligence attributed to him, such as drunken driving, failure to have his vehicle under control, and failure to keep a lookout.
Plaintiff sustained injuries to his left elbow, left hip, low back, nose, right eye, and lost a tooth. The back injury, the most serious, consisted of a fracture approximately one-third of an inch at the tip of one of the transverse processes. Dr. *543 Haslam, the treating physician, an orthopedic specialist, states that the X-rays positively showed the existence of this fracture, while Dr. Romano, who examined plaintiff once and at the request of defendants, states he found nothing on the X-ray which would indicate plaintiff had sustained a fracture. However, Dr. Haslam’s X-ray is filed in evidence, the fracture being marked by an arrow made by the doctor himself.
There is no question that plaintiff’s back lias given him a great deal of trouble and it is necessary that he wear a lumbar corset for support. He has suffered severely and has, to some extent, been incapacitated for a considerable period. Approximately four days before the trial below, Dr. Haslam made an examination and still found positive objective evidence of disability in plaintiff’s back sufficient to support the complaints of pain.
Plaintiff entered a Veterans. Administration Hospital on December 16, 1957, and was placed in pelvic traction, which we understand is a quite painful procedure, and remained in the hospital for a period of thirty-six days.
The injury to the left elbow seems to have been superficial, and little mention is made of it in the medical testimony.
It may be doubted the pathology in the left hip stemmed from the accident as Dr. Haslam states he' thought plaintiff had a contusion in the area, but was not sure, and the tenderness could have been caused by a metal pin and two nails which had been surgically inserted in plaintiff’s hip to alleviate a prior complaint.
Plaintiff was also treated for a condition of the nose which was aggravated as the result of a blow sustained in the collision. He was found to have multiple adenomatous polyps, and it was necessary that a surgical procedure be employed to remedy the condition. He also sustained the loss of a tooth, which was loosened in the accident and had to be extracted.
The injury to plaintiff’s right eye which resulted from slivers of glass lodging therein produced a condition which an eye specialist defined as “purulent conjunctivitis,” but this condition completely cleared up after a course of treatment.
The total amount of plaintiff’s physicians’ fees, hospital bills, drug bills, and the lum-bosacral corset aggregates $870.59. For a period of nine weeks he was in no condition to resume his cab driving occupation and lost nine weeks of earnings which totalled $585. Even at the time of the trial he had not been able to return to full time employment, and since March 1958, when he resumed driving his cab, he could only work part time and earned much less than he would have had he been able to pursue his occupation on a full scale. One of his complaints is that because of the painful back injury, he is physically unable to change tires on his vehicle and that during the working .day finds it necessary to go to his home in order to rest. He estimated his partial loss of earnings was approximately $960 to the time of trial. Whether plaintiff’s disability will cease is not shown by the record, but, on the other hand, there is nothing indicating that he will be permanently incapacitated to any extent.
The trial court allowed a recovery of $9,-500, and in view of the substantial monetary loss of $2,415.59, the serious nature of the injuries, the surgery required, the stay of 36 days in the hospital, the traction, pain and suffering, the loss of a tooth, and the annoyance and inconvenience of wearing the corset, coupled with the likelihood that the injury will persist and the painful condition endure and plaintiff will be partially incapacitated from carrying on his employment for an extended period of time at a diminished rate of earnings, we do not consider the award to be excessive.
For the reasons assigned, the judgment appealed from be and the same is hereby affirmed.
Affirmed.